Marc J. Randazza, #027861
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Tel: (702) 420-2001
ecf@randazza.com

David S. Gingras, #021097
GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

John C. Burns, MBE# 66462*
BURNS LAW FIRM
P.O. Box 191250
Saint Louis, MO 63119
Tel: 314-329-5040
Fax: 314-282-8136
TBLF@pm.me

Attorneys for Plaintiffs
TPG Communications, LLC and Jordan Conradson

*pro hac vice forthcoming

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| TGP Communications, LLC, d/b/a The Gateway Pundit, a Missouri limited liability company; and Jordan Conradson, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>Jack Sellers, Thomas Galvin, Bill Gates, Clint Hickman, and Steve Gallardo, in their respective official capacities as members of the Maricopa County Board of Supervisors; Stephen Richer, in his official capacity as the Maricopa County Recorder; Rey Valenzuela and Scott Jarrett, in their official | Case No. _____<br><br>**COMPLAINT** |

capacities as Maricopa County Election Directors; and Megan Gilbertson and Marcus Milam, in their official capacities as Maricopa County Communications Officers,

Defendants.

# COMPLAINT

TGP Communications, LLC, d/b/a The Gateway Pundit ("TGP") and Jordan Conradson ("Conradson") (together, "Plaintiffs") bring the following Complaint against Defendants Jack Sellers, Thomas Galvin, Bill Gates, Clint Hickman, and Steve Gallardo, in their respective official capacities as members of the Maricopa County Board of Supervisors; Stephen Richer, in his official capacity as the Maricopa County Recorder; Rey Valenzuela and Scott Jarrett, in their official capacities as Maricopa County Election Directors; and Megan Gilbertson and Marcus Milam, in their official capacities as Maricopa County Communications Officers ("Defendants") and, in support of this Complaint, aver as follows:

## INTRODUCTION

1. This is a case about the Freedom of the Press.

2. The Defendants have violated that freedom, to not only the Plaintiffs' detriment but to the detriment of the entire marketplace of ideas.

3. Central to the people's power in our democracy is the right to vote in free and fair elections. An integral part of that right is the duty of the press to inspect election processes to ensure that they are free and fair, and to call out corruption of the electoral process wherever it may be found. Or the opposite, to show the public that the process is fair, clean, and un-corrupt, thus fostering trust in our system.

4. This duty of the press can only be accomplished through the eyes of a reporter on the ground; it is not sufficient for a news agency to rely on the reporting of others who are so sufficiently gelded that the government approves of them. That is not how the freedom of the press works.

5. If it were so, then the government would be able to select its preferred press outlets, leaving any who may challenge the government to simply pick up the crumbs from the table of the government-sponsored press.

6. That is what the government is doing, in Arizona, right now.

7. Plaintiff TGP is a news publication that conducts investigative journalism in pursuit of an open government. Conradson is a reporter affiliated with TGP.

8. Maricopa County Elections Department requires a press pass to attend press conferences and, as of November 10, 2022, apparently to even investigate or report on the election process in Maricopa County, Arizona.

9. Conradson and TGP requested a press pass, despite the constitutionally repugnant and facially invalid requirements and standards (or lack thereof) to receive one.

10. In violation of TGP and Conradson's First Amendment rights, Defendants unlawfully denied their application for a press pass, stating that Conradson was "not a bona fide correspondent of repute in [his] profession." And the Defendants further determined in a "star chamber" process that TGP did not meet its standards for unbiased journalism.

11. The government does not get to pick and choose who is an approved journalist and who is not, at least not on the basis of the content of the journalist's reporting or their viewpoint.

12. As a result of Defendants' unlawful actions, Plaintiffs have been deprived of their ability to investigate and report on the Arizona election process.

**PARTIES**

13. Plaintiff TGP Communications, LLC, d/b/a The Gateway Pundit is a Missouri limited liability company.

14. Plaintiff Jordan Conradson is a political reporter based in Arizona.

15. Defendants Jack Sellers, Thomas Galvin, Bill Gates, Clint Hickman, and Steve Gallardo comprise the Maricopa County Board of Supervisors, and are named in this action in their respective official capacities only. The Board of Supervisors is charged by law with conducting elections within its jurisdictional boundaries.

16. Defendant Stephen Richer is Recorder of Maricopa County, and is named in this action in his official capacity only. The County Recorder is the principal elections officer of Maricopa County and is responsible for overseeing and directing numerous components of election administration within this jurisdiction.

17. Defendants Rey Valenzuela and Scott Jarrett are the Election Directors of Maricopa County, and are named in this action in their respective official capacities only. The Maricopa County Election Directors are responsible for overseeing and directing numerous components of election administration within this jurisdiction.

18. Defendants Megan Gilbertson and Marcus Milam are two Maricopa Communications Officers, and are named in this action in their respective official capacities. The Maricopa Communications Officers are responsible for maintaining contact between Maricopa County and the press, and, upon information and belief, oversee approval of press credentials.

**JURISDICTION AND VENUE**

19. This Court has original subject matter jurisdiction over the federal Constitutional violations alleged in this Complaint pursuant to the provisions of 42

U.S.C.§ 1983 and 28 U.S.C. § 1331 & 1343. This Court has jurisdiction to issue injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. §1983.

20. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391. All Defendants reside in Arizona, and all actions pertinent to this complaint occurred in Maricopa County, Arizona.

## GENERAL ALLEGATIONS

21. This year's election will control the outcome not only of individual races across the country, but will also control the balance of power between the two major political parties in the United States Congress.

22. Currently, Government officials in Maricopa County, Arizona are continuing to count ballots which have been lodged by the people of Arizona.

23. The current election in Maricopa County has been fraught with complications and issues, which may affect the impending results of this election.

24. Reasonable minds can disagree as to whether Maricopa County handled its election duties competently, but there is no doubt that how they handled it, and how they continue to handle it, is a matter of public concern and public debate.

25. Accordingly, it is of great interest to the press to view and inspect the processes of the Maricopa County elections in order identify any issues with the election process or assure the public that the election has been free and fair.

26. TGP is a news publication consisting of news, commentary, punditry, and analysis. As many Americans continue to lose trust in the purportedly unbiased nature of older "institutional" newspapers and networks, TGP highlights that it is addressing this gap as a trusted news source for the stories and views that are largely untold or ignored by traditional news outlets. One of its core values is that it "must have courage in order expose

the truth about powerful interests that may be angered by our coverage." Part of TGP's mission is conducting investigative journalism in pursuit of an open government.

27. Maricopa County has established a special procedure for members of the press to participate in election coverage within its jurisdiction. Maricopa County's website states that: "Maricopa County will require an official Press Pass for members of the press to enter its facilities and/or cover events related to the 2022 General Election." *See* **Exhibit 1**, Maricopa County 2022 Elections Press Pass.[1]

28. The Maricopa County website further states that members of the press will be evaluated based upon the following criteria:

    a. Is the person requesting press credentials employed by or affiliated with an organization whose principal business is news dissemination?

    b. Does the parent news organization meet the following criteria?
        i. It has published news continuously for at least 18 months, and;
        ii. It has a periodical publication component or an established television or radio presence.

    c. Is the petitioner a paid or full-time correspondent, or if not, is acting on behalf of a student-run news organization affiliated with an Arizona high school, university, or college?

    d. Is the petitioner or its employing organization engaged in any lobbying, paid advocacy, advertising, publicity, or promotion work for any individual, political party, corporation, or organization?

    e. Is the petitioner a bona fide correspondent of repute in their profession, and do they and their employing organization exhibit the following characteristics?
        i. Both avoid real or perceived conflicts of interest;
        ii. Both are free of associations that would compromise journalistic integrity or damage credibility;

---

[1] Available at: <https://www.maricopa.gov/5856/Maricopa-County-2022-Elections-Press-Pas> (last accessed Nov. 11, 2022).

> iii. Both decline compensation, favors, special treatment, secondary employment, or political involvement where doing so would compromise journalistic integrity; and
>
> iv. Both resist pressures from advertisers, donors, or any other special interests to influence coverage.
>
> This list is not exhaustive. The time, manner, and place limitations or needs of any one event may require consideration of additional factors.

*See* **Exhibit 1**.

29. The Maricopa County Elections website includes a link through which reporters can apply for registration and access to a press pass. *See* **Exhibit 2**, County Press Page Registration form. The application requests the name and contact information for the reporter, the news organization the reporter works for, contact information for the reporter's supervisor, and links to examples of the reporter's work. *See id*.

30. On or about September 27, 2022, TGP and its reporter Conradson applied for press credentials to view the vote tabulation process in Maricopa County and to participate in press conferences given by its officials. *See* **Exhibit 3**, Completed Registration Form.

31. On or about September 30, 2022, TPG and Conrad received a notice from the Maricopa County Elections Department denying their request for press credentials. The denial email specifically stated:

> Thank you for applying for a Maricopa County Press Pass. This email is to notify you that you have been denied a press credential based on the following criteria which is listed on Maricopa.gov:
>
> - #4[sic]: You (a) do not avoid real or perceived conflicts of interest and (b) are not free of associations that would compromise journalistic integrity or damage credibility. Therefore, you are not a bona fide correspondent of repute in your profession.

*See* **Exhibit 4**, Denial and Appeal Email.

32. Plaintiffs continued to report on the matters of public concern in Maricopa County, but they simultaneously attempted to convince Maricopa to change its mind. Its letter demanding a change was ignored.

33. On November 10, 2022, Maricopa county however took this rejection even further, not even allowing the Plaintiffs to remain on the curtilage of the Maricopa County Elections Office, and ejected them completely from the property, not even allowing them to be outside the gate to cover the events inside in any manner at all, and upon being ejected, the government used a drone to follow them to further intimidate them from continuing to make any meaningful effort at newsgathering.

34. Other members of the press who apparently worked for media outlets that were deemed sufficiently compliant with the government were allowed to attend and remain within the cordon set up around the Maricopa County building.

35. Accordingly, TGP and Conradson were unable to participate in that press conference and future press conferences, and they were unable to view the ballot-counting process which is essential to their reporting – not even from afar.

36. On November 10, 2022, TGP and Conradson transmitted a written appeal email to Defendants. *See* **Exhibit 4**, Denial and Appeal Email.

37. Further, on November 10, 2022, counsel for TGP transmitted a letter to Defendants demanding that press credentials be issued immediately to TGP and Conradson and putting Defendants on notice that their continued denial of press credentials was unlawful. *See* **Exhibit 5**, John C. Burns letter dated November 10, 2022.

38. Any reasonable person in America should have known that this was unlawful, as this very issue was the matter of extensive press coverage when then-President

Donald Trump decided that Jim Acosta and CNN were not sufficiently compliant with his administration, and thus they were barred from the White House press corps.[2]

39. To-date, Defendants have not issued press credentials to Defendants, and have barred them from even approaching the building where our democracy hangs in the balance. This is a clear effort to impede the Plaintiffs' efforts to gather the news. Defendants are unable to participate in press conferences or view the vote tabulating process in Maricopa County – not even from outside the building.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the U.S. Const., Amendment I under 42 U.S.C. § 1983**

40. Plaintiffs repeat, reallege, and incorporate the allegations in the paragraphs above as though fully set forth herein.

41. Defendants' decision to deny press credentials on the basis of the Plaintiffs' viewpoint violates the First Amendment.

42. Defendants went even further, by not even allowing Plaintiffs to approach the building where the vote counting is taking place, again on the basis of viewpoint.

43. Plaintiffs' access to the Maricopa government facilities, their coverage of the ongoing election in Maricopa County, and their participation in official Maricopa County election press conferences are and were all protected activities under the First Amendment.

---

[2] *See, e.g.,* Paul Farhi, "Judge hands CNN a victory in its bid to restore Jim Acosta's White House press pass," Washington Post (Nov. 16, 2018), available at: <https://www.washingtonpost.com/lifestyle/style/judge-hands-cnn-victory-in-its-bid-to-restore-jim-acostas-white-house-press-pass/2018/11/16/8bedd08a-e920-11e8-a939-9469f1166f9d_story.html>; Jessica Gresko and Michael Balsamo, "Judge orders White House to immediately return CNN's Jim Acosta's press pass," KPNX 12News (Nov. 16, 2018), available at: <https://www.12news.com/article/news/nation-world/judge-to-rule-friday-in-cnn-reporters-white-house-credential-case/507-615125521>.

44. Defendants have deprived Plaintiffs of their right to access the Maricopa County government facilities by denying Conradson's press credentials. Without those credentials, Conradson cannot access Maricopa County government buildings and cannot effectively view on the ongoing election process in Maricopa County and ask questions of Maricopa County government officials, thus depriving Plaintiff TGP of its ability to report on the election process.

45. As purported ground for denying Plaintiffs' press credentials, Defendants claim that Conradson does not "avoid real or perceived conflicts of interest," is not "free of associations that would compromise journalistic integrity or damage credibility," and is not "a bona fide correspondent of repute in [his] profession."

46. Defendants have no basis for these determinations. The standards are unworkably and unconstitutionally vague and function as an unlawful licensing scheme to limit newsgathering to preferred or controlled media.

47. Defendants' justifications for impeding Plaintiffs' First Amendment rights are not sufficiently compelling to justify denial of press credentials. Consequently, the only reasonable inference from Defendants' conduct is that they have denied Conradson a "newsgathering license" as a form of content- and viewpoint-based discrimination and in retaliation for Plaintiffs' exercise of protected First Amendment activity.

48. The sole justification for Defendants' conduct is their dislike for Plaintiffs' politics and critique of the election processes. But that is insufficient to justify such a substantial restriction on Plaintiffs' First Amendment rights.

49. Defendants' criteria for granting press credentials to the media is subjective and violates Plaintiffs' First Amendments rights.

50. Defendants' criteria for granting press credentials to the media unlawfully grants them unfettered discretion to choose which media may provide favorable coverage of Defendants and their management of the election process in Maricopa County.

51. Defendants' denial of Plaintiffs' press credentials violates the Freedom of Press guaranteed to them under the First Amendment.

52. Defendants' denial of Plaintiffs' press credentials violates the Freedom of Speech guaranteed to them under the First Amendment.

53. Defendants' denial of Plaintiffs' press credentials violates the Freedom of Association guaranteed to them under the First Amendment.

54. Defendants' criteria for determining who is eligible for press passes in Maricopa County are unconstitutionally vague.

55. Plaintiffs have been injured, or reasonably fear imminent injury, by these constitutional violations, and Plaintiffs are entitled to relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs TGP Communications, LLC, d/b/a The Gateway Pundit and Jordan Conradson respectfully request that the Court enter judgment in Plaintiffs favor, and against Defendants, providing the following relief:

A. Immediate authorization of Conradson's press credentials or in the absence of such credentials, access to newsgathering and press conferences equal to other press outlets, so that Plaintiffs may continue to report from Maricopa County government premises and perform their jobs viewing and reporting on the election process;

B. A declaration that the denial of Conradson press credentials was unconstitutional, in violation of the First Amendment; and,

Complaint

C. A declaration that the press credential regulations are unconstitutional; and,

D. All costs, disbursements, fees, and interest; and,

E. Such other and additional remedies as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: November 12, 2022.   Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza, #027861
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Ste. 109
Las Vegas, Nevada 89117

David S. Gingras, #021097
GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
Phoenix, AZ 85044

John C. Burns (*pro hac vice* forthcoming)
BURNS LAW FIRM
P.O. Box 191250
St. Louis, Missouri 63119

Attorneys for Plaintiffs
TPG Communications, LLC and
Jordan Conradson